JOEL HOWE *versus* SIMON HANDLEY & *al.*

Where an indenture is entered into between an insolvent debtor on the first part, two trustees on the second part, and several creditors of the insolvent, on the third part, containing the same covenants on the part of the trustees, but having these words inserted therein — "It being expressly declared and agreed, that they, the said party of the second part, shall be answerable only for their individual receipts, payments and wilful defaults, and not otherwise" — if the trustees are liable in any way for neglecting and refusing to collect and pay over certain demands, assigned by the indenture, they are, in an action at law, only liable to be called upon separately, by several actions.

THE action was covenant broken on an indenture made and concluded on the 28th day of June, 1837, by and between the plaintiff of the first part, the defendants of the second part, and creditors of said Howe, who signed and sealed said indenture, of the third part.

The action was opened for trial before SHEPLEY J. and came before the whole Court on exceptions to his ruling. And in order to present the case reserved, the exceptions state, for the full Court, the following extracts are made from said inden-

ture, to wit: — " Now this indenture witnesseth, that the said Joel Howe, in consideration of the premises and five dollars, paid him by said Simon Handley and John Hussey, the receipt whereof is hereby acknowledged, doth grant, bargain, sell and convey unto the party of the second part, their executors, administrators and assigns, all the said Howe's lands, tenements and hereditaments, goods, chattels, merchandize, debts and sum and sums of money due, owing or belonging unto the said Howe, and all securities had, taken and obtained for the same, and all his right, title and interest in and to the same, a schedule of which is to be annexed as soon as may be ; to have and to hold the same, with the appurtenances to them, the said party of the second part, upon the special trusts, nevertheless, that the said party of the second part shall forthwith take posses sion and seizin of the premises, and within such convenient time as to them shall seem meet, by public or private sale, for the best price that can be procured, shall convert all and singular the premises into money, and as soon as possible collect all and singular the debts and sum and sums aforesaid, and after deducting the costs and charges of the trusts before mentioned, shall pay and apply the money arising therefrom in manner following: — that is to say, that the said trustees shall pay and discharge, in equal proportions, the respective debts of all the creditors who shall have signed and sealed these presents ; and in the second place, after the full satisfaction and discharge of all the debts last above mentioned, out of the residue, if any, shall pay all other creditors of said Howe, in equal proportions; and in the last place, shall pay over the surplus, if any, to the said party of the first part, his executors, administrators or assigns.

" And the said Joel Howe, in furtherance of the premises, doth hereby make, constitute and appoint the said party of the second part, his true and lawful attorneys, irrevocable in his name or otherwise ; and upon and for the trusts aforesaid, to ask, demand, recover and receive, of and from all and every person or persons, all and singular the goods, chattels, wares and merchandize, debts, sum and sums of money and demands,

due, owing or belonging unto him, and upon all receipts and delivery in the premises, due acquittances and discharges in his name or otherwise, to make, execute and acknowledge, and in default of delivery, or payment in the premises, to sue, prosecute and implead for the same; and to compound and agree for all or any part thereof, as they may see meet, and upon such composition, or other agreements, to make due acquittances and releases; and also for all or any of the purposes aforesaid, to constitute one or more attorney or attorneys under them, the said Simon Handley and John Hussey.

"And the said party of the second part do hereby covenant with the said party of the first part and with all and every of the creditors parties hereto of the third part, that the party of the second part shall and will well and truly execute and perform all and singular the trusts hereby in them reposed, and in and concerning all matters and things relating to the said trusts, interests and purposes, herein contained, shall and will act in the execution of the said trusts to the best of their discretion and judgment.

"It being expressly declared and agreed, that they, the said party of the second part, or other, the trustee, or trustees, under this indenture, shall be answerable *only* for their individual receipts, payments, and wilful defaults, and not otherwise, and that they shall receive a reasonable compensation for their services."

Then follows a provision, that if the assignees shall decease, or become unable to execute the duties of the trust, that the creditors, or the major part of them, may appoint others in their place.

The plaintiff also read and put into the case another indenture between all the parties to the first, wherein, after reciting that the parties of the third part "did receive from said assignees, and divide among themselves, the sum of twenty-three hundred and ninety-two dollars, and there are now certain demands, claims, lands and other property, which have not been collected, sold, nor the proceeds paid over to said creditors," in consideration of a further sum paid by Howe to the

Howe v. Handley.

creditors, Handley and Hussey, the party of the second part, with the assent of the creditors, "do hereby assign, release and make over to the said Howe, for his own use and benefit forever, all their right, title and interest in and to all property, lands, claims, notes, accounts and demands which were assigned by said Joel Howe to said Handley and Hussey for the use and benefit of said creditors," then remaining unsold or uncollected.

Before the case was opened for trial, the defendants had pleaded the general issue, with a brief statement of performance, and that if liable, they were not liable jointly, but severally only. And the plaintiff had assigned as breaches of the covenants contained in the indenture, "the neglect and refusal of the defendants to collect and pay over, agreeably to said trusts, the four following demands, assigned by said indenture, to wit: —

"One demand against John W. Chapman, for  $57,82
  "   "   "   W'm P. Harrington, "   86,94
  "   "   "   John L. Reed,   "   65,95
  "   "   "   Nath'l Adderton,   "   16,72."

"The presiding Judge having ruled, that the plaintiff was not entitled to a joint judgment, a nonsuit was entered, with leave to take off the same, if in law a joint action can be maintained; the only question reserved for the full court being, whether the defendants were liable severally only or jointly." It was to this ruling of the Judge, only, to which the exceptions were taken.

*H. C. Lowell*, for the plaintiff, said, that in giving a construction to the indenture, the whole instrument is to be taken together, and all its parts be made to harmonize, if it can be done.

The conveyance of the property was to both of the defendants jointly. The language is strong, that they shall collect the debts jointly, and do every act, indeed, jointly. The language will not authorize a several action in any act whatever, in relation to the property conveyed to them. This very action is, and must necessarily be, brought on their joint covenants

that they will collect the debts, and on their omission so to do. It is difficult to perceive, how a separate action could be maintained upon this indenture. He contended, that the true construction was, that the defendants were jointly liable for all omissions, and all defaults whatever, excepting when money has come into the hands of one of them separately, or where the liability arises from wilful, intentional defaults and misconduct. The ground of this action is a mere neglect of the duty they have jointly covenanted to perform. It was, besides, the duty as much of one as of the other to collect these debts; and it is not apparent how one can be guilty of this neglect, unless both are. If the duty was discharged by either, it would necessarily be performed by both. The action, then, is rightly brought against both.

This is the only question before the Court. But if it be said, that the remedy was by bill in equity, the reply is — first, that when this suit was brought, the law did not extend to a case like this; and second, that a complete remedy existed at law upon the covenants contained in the indenture.

*E. Smith*, for the defendants, said that he, too, considered the law to be clear, that the whole indenture should be taken into consideration in giving it a construction; but in so doing, the true construction is, that the liability under it is several, and not joint. To show that he was right, he examined and commented upon the various parts of it.

Where the obligors or covenantors contract severally, although in the same instrument, the remedy is by a several suit, and by that alone, although the parties may stand in the same relation. 5 Coke, 23; Croke Eliz. 408, 470, 546; *Collins* v. *Prosser*, Dow. & R. 112, (8 Com. L. R. 183); 1 Chitty on Pl. 31, 34. The Court will not take cognizance of distinct liabilities of different persons in one suit. Where two or more covenantors contract, as trustees, to act for the benefit of creditors, without any stipulation in terms, that they shall be only severally liable, still from the nature of the contract, they are holden only liable severally, each for himself. 4 Pick. 518. Although that case was in equity, it is equally in

Howe *v.* Handley.

point, for the rules of construction of instruments are the same in equity as at law.

In the present case, however, in the assignment itself, it is clearly stated, that the liability shall be merely several, by the following clause, inserted to remove all doubts : — "It being expressly declared and agreed, that they, the said party of the second part, or other the trustee or trustees under this indenture, shall be answerable *only for their individual* receipts, payments, and wilful defaults, *and not otherwise."*

The opinion of a majority of the Court, WHITMAN C. J. dissenting, was drawn up by

SHEPLEY J. — The defendants were the trustees in a deed of assignment made by the plaintiff as an insolvent debtor for the benefit of his creditors. They assumed and had partly executed the trust, when the property not disposed of, was reconveyed to the plaintiff by an agreement between him and those of his creditors, who had become parties to the assignment. This suit is against both the trustees to recover damages for an alleged neglect and refusal to collect and pay certain demands assigned to them. One of the defendants is known to be an attorney, part of whose regular business it is to collect debts for others. The other is not an attorney. Trustees are often designedly selected from men engaged in different kinds of business, that the knowledge and skill of each in his own business may be made useful in the execution of the trust. In such cases it is usually well understood by all parties, without any express agreement to that effect, that each trustee will attend only to that part of the business, to which he has been accustomed. An attorney would not in such cases be expected to be active in making arrangements for the disposition of merchandize and lumber. Nor would a person accustomed to such business be expected to attend to the collection of debts, when one of the trustees was an attorney. It could not in such cases be expected, that one trustee should be responsible for the diligent attention of another to that part of the business, of which he had little or no know-

ledge, and of whose faithful attention to his business he would be very illy qualified to judge. The law does not therefore ordinarily hold trustees responsible for the conduct of each other in the management of the trust property. They are separately and not jointly liable for any default or unfaithfulness; unless they have expressly agreed to be jointly liable, or have performed some act jointly, or have in some mode given countenance to, or aided another in, the alleged default.

In the case of *Churchill* v. *Hopson*, 1 Salk. 318, Lord Chancellor Harcourt stated the "rule of law to be, "if two trustees join in a receipt, and one receives the money, he only, that receives shall be liable." Such was stated to be the law in the case of *Fellows* v. *Mitchell*, 1 P. Wms. 81. And such appears to be the settled doctrine without further variation, than to hold the receipt to be *prima facie* evidence of a receipt of the money by both, subject to be rebutted by proof, that it was received by one. *Monell* v. *Monell*, 5 Johns. Ch. R. 283. In the case of *Leigh* v. *Barry*, 3 Atk. 584, such was stated to be the law, when there were no negative words in the deed creating the trust. The provisions of the deed of assignment are not stated in the report of the case of *Ward* v. *Lewis*, 4 Pick. 518, but it was there stated as a general proposition, that "trustees are liable only for the money, which they have actually received;" and the trustee, who had not received any of the property, was not charged. In the case of *Worth* v. *McAden*, 1 Devereux & Battle's Eq. 199, it appears to have been held, that a trustee was chargeable with money, which ought to have come to his own hands, or which passed through them, or which had been wasted or misapplied by his co-trustee with his concurrence. But a mere neglect to withdraw money from the hands of a co-trustee was not considered to be such a concurrence as to make him chargeable.

In deeds of assignment *inter partes*, each party, often including more than one person, usually enters into the same covenants. To prevent such joint covenants from having the effect to impose upon the trustees a liability more extensive than the law would impose, and greater, than the parties in-

tended, the best forms of such deeds of trust contain some clause, substantially like the one found in this deed, to declare, that their liability shall continue to be several and not joint. And such clause is often used to limit their liability more strictly, than it would be by law. Hence such a clause is found in this deed. And it should receive a construction which will effectuate the design of its introduction. It is not perceived, that full effect can be given to all the words contained in the clause without limiting the liability of the trustees to an individual and sole liability. The clause is in these words. "It being expressly declared and agreed, that they, the said party of the second part, or other the trustee or trustees, under this indenture, shall be answerable only for their individual receipts, payments, and wilful defaults, and not otherwise; and that they shall receive a reasonable compensation for their services." This language plainly states, that they shall not be otherwise answerable, than for their individual receipts, payments, and wilful defaults. The argument, that they are solely liable for these, and that they remain jointly liable for their joint receipts and payments, and for other neglects and defaults, than those denominated wilful, is attended with this difficulty; that it wholly overlooks and disregards the words, "and not otherwise." The effect of which words is to declare, that they shall not be answerable otherwise, that is, in any other manner, than individually, for their receipts, payments, and wilful defaults. Such a construction, as is insisted upon, cannot be made without a violation of the rule of law, which requires, that full effect should be given to all the language of a deed, if it be possible; or without a departure from the plain and obvious meaning of the language by some forced construction. There is no occasion for any other than a literal construction for the purpose of securing to the plaintiff all his just rights. If there have been joint receipts of money, which is not alleged, both the trustees cannot have the custody of it, and each may be held accountable for that portion of it, which he has. And each may also be separately answerable for that held by the other, if he have in any manner countenanced any improper

detention or misapplication of it; for he would then be guilty of a wilful default.   It might be difficult, in certain cases, to procure and introduce testimony in an action at law to prove, that a particular trustee had received the money.   If so, the objection does not reach the rights of the parties.   It applies only to one remedy ; and that one is by no means the most appropriate.   For it would seem to be more suitable to call upon the trustees to account for the property by a bill in equity, so that they might have an opportunity to state the manner, in which they had managed it.   In such a mode of seeking redress, there would be found little difficulty in ascertaining all the facts in relation to the receipt of money.   It would be attended by this advantage, that all the trustees could be called upon by one suit, and yet each be made separately liable for his own proceedings.   In case of improper payments made by them jointly, the default must, in the sense of the law, be wilful ; and each would be liable separately. If it were the pleasure of the parties to make the trustees liable only for their " wilful defaults," and not for other and less culpable omissions and neglects of duty; the Court can have no just right by a strained construction to make them otherwise liable.   It is not unreasonable, that trustees who undertake the performance of such trusts, should insist upon being liable only, for what are denominated wilful defaults.   Prudent men, who are diligent and attentive to their own business, may at times allow those of their debts, which are not payable at any particular time, to remain so long uncollected, that they would, after their debtors have become less able to pay, charge themselves with neglect.   For such neglect a trustee, who is not expected to neglect his own business by devoting his whole time to the execution of a trust, may properly refuse to be made liable.   He would be but claiming the same protection by a stipulation in the deed, which Lord Hardwicke, in the case of *Knight* v. *the Earl of Plymouth*, 3 Atk. 480, said, the law would afford him without it.   He is reported to have said in that case, " if there was no *mala fides*, nothing wilful in the conduct of the trustee, the Court will always favor him."

And in case of *mala fides*, or gross neglect, the trustee would be liable as for a wilful default. Mr. Maddock, in his treatise on the principles and practice of the Court of Chancery, says, " a trustee is only answerable for fraud or gross neglect, which is equal to fraud." 2 Mad. 121. In the case of *Pybus* v. *Smith*, 1 Ves. Jr. 193, Lord Chancellor Thurlow said, " You cannot affect the trustees with more, than they actually received without wilful default." Mr. Justice Story, after an examination, says, the result would seem to be, " that where a trustee has acted in good faith in the exercise of a fair discretion and in the same manner, as he would ordinarily do in regard to his own property, he ought not to be responsible for any losses accruing in the management of the trust property." 2 Story's Eq. § 1272. And that he would seem to be " bound only to good faith and reasonable diligence, and, as in case of a gratuitous bailee, liable only for gross negligence." ib. § 1268. By the insertion of a provision for their reasonable compensation, it could not have been intended to increase their liability, or to change the law in relation to it ; especially when the same clause appears rather designed to restrict it.

Whatever may be the true construction of the deed of assignment in this case, the trustees, according to the authorities, can be liable in this action only for such an omission to collect the debts claimed, as would amount to culpable negligence ; and such negligence would in law be considered a wilful default. *Shepherd* v. *Towgood*, 1 Tur. & Russ. 379. In that case the defendants were trustees under a deed of assignment, made by insolvent debtors for the benefit of their creditors. One of the assignors, by a marriage settlement, was entitled to the interest accruing on a certain sum of money during his life. The trustees had omitted to collect it for a long time. The bill, among other alleged defaults, charged this to be gross negligence and a breach of trust. The answer of one of the trustees stated, that the trustee under the marriage settlement, from whom the interest should have been collected, had deceased, that there had been negotiations with her executors respecting it ; other excuses were offered for the

omission, and it was stated, that a suit had finally been com-
menced to recover it, but it admitted, that it had not been
collected. The trustees were held to account further, but were
made liable only for losses occasioned by their wilful neglect
or default. The decree stated, that the creditors were entitled
to a further account of the effects of the assignors, " which,
without the wilful neglect or default of the said John Tow-
good and John Ingram, or either of them, might have been
received or possessed by them or either of them." A master
was appointed to take the account with instructions " not to
take over again or disturb any account, which has been already
taken by him, farther or otherwise, than may be necessary to
let in any charges of wilful neglect or default, which the plain-
tiffs in this cause may be able to substantiate." It does not
appear from the report of that case, that the liability of the
trustees was regulated by any provision in the trust deed.

If the trustees in this case are liable for neglecting and
refusing to collect and pay the debts, as alleged in the declara-
tion, they are only liable to be called upon separately in an
action at law, and as for a wilful default; and the nonsuit
should be confirmed.